**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ALISHA SEWALL AND JOSEPH SEWALL** | § | **NO. ____________________** |
| | § | |
| **Plaintiffs** | § | **JURY DEMANDED** |
| | § | |
| **v.** | § | |
| | § | |
| **ALDINE INDEPENDENT SCHOOL DISTRICT** | § | |
| | § | |
| **Defendant** | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

In this Original Complaint, Plaintiffs, Alisha Sewall and Joseph Sewall, respectfully assert as follows:

## I. INTRODUCTION

1. This case involves Aldine Independent School District ("AISD")—a federally funded and state-funded Texas public school district's—long-running and ongoing retaliation against and interference with the rights of Alisha Sewall and Joseph Sewall—who are married, highly accomplished AISD employees —in violation of the ADA, the Rehabilitation Act ("RA"), and Tex. Labor Code section 21.001 *et seq.* ("TLC").

In 2004, Ms. Sewall suffered serious, debilitating, and long-term physical and psychological injuries while serving in the United States Army in Iraq during

"Operation Iraqi Freedom." Since 2004, Ms. Sewall has undergone multiple surgeries, extensive physical rehabilitation, and extensive psychiatric therapy to address her serious service-related injuries. In 2017, the United States Department of Veteran Affairs ("VA") determined that Ms. Sewall is 100% disabled from Post-Traumatic Stress Disorder ("PTSD") and partially disabled from other service-related injuries.

In June 2022, "The Rescue For PTSD"—a non-profit organization that trains and provides service dogs to disabled U.S. military veterans suffering from PTSD—awarded Ms. Sewall a specially trained service dog, "Independence" (a/k/a "Inde") to help her cope with her debilitating PTSD, major depression, and physical injuries.

Unfortunately, for approximately six months (September 2022 through February 24, 2023), AISD purposely and repeatedly delayed and refused to reasonably accommodate Ms. Sewall's disabilities by allowing her to have and use "Inde" while working as an office-based project analyst. AISD refused Ms. Strife the right to have and use "Inde" at work, despite numerous pleas from Ms. Sewall (both individually and through counsel), her VA treating physicians, and "The Rescue for PTSD."

As a result, after filing an EEOC/TWC Charge of Discrimination against AISD and exhausting her administrative remedies under the ADA and the TLC, Ms.

Sewall filed two lawsuits against AISD under federal and Texas law for such disability-based discrimination. *See Alisha Strife v. Aldine Independent School District et al*, No. 2023-03186 (333rd District Court, Harris County, Texas (hereinafter "*Strife I*"); *Alisha Strife v. Aldine Independent School District*, No. 4:23-cv-00358 (S.D. Texas, Houston Division) (hereinafter "*Strife II*").[1]

Because she filed *Strife I* and *Strife II*, AISD has continuously retaliated against Ms. Sewall, including—as detailed below—by capping her compensation; refusing to promote her; constructively demoting her; scuttling her efforts to obtain employment outside AISD; and subjecting her husband, Joseph Sewall, to retaliation and interference with his ADA, RA, and TLC rights.

As detailed below, because he aided, assisted, and encouraged Ms. Sewall's rights in *Strife I* and *Strife II*, AISD has also retaliated against and interfered with Mr. Sewall's rights under the ADA, RA, and TLC, including by capping his compensation, refusing to promote him, and constructively demoting him.

Accordingly, this lawsuit is designed to remedy AISD's continuing violations of Alisha Sewall and Joseph Sewall's rights under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* and prevent AISD from subjecting them to such other illegal conduct in the future.

---

[1] When she filed *Strife I* and *Strife II*, Ms. Sewall's last name was "Strife."

## II. JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, in that claims are asserted against Defendant, AISD, under federal law: specifically, the Americans with Disabilities Act ("ADA"), 42 U.S.C. section 12111 *et seq.*; and the Rehabilitation Act, 29 U.S.C. section 791 *et seq.*

3. This Court has supplemental jurisdiction of Plaintiffs' state law claims against AISD under 28 U.S.C. section 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

4. Venue lies in this District pursuant to 28 U.S.C. § 1391, in that AISD resides in this District.

## III. PARTIES

5. Plaintiff, Alisha Sewall, is a citizen of the United States and a resident of the State of Texas.

6. Plaintiff, Joseph Sewall, is a citizen of the United States and a resident of the State of Texas.

7. Defendant, Aldine Independent School District ("AISD"), is a Texas public school district organized and operated under Chapter 11 of the Texas Education Code.

## IV. RELEVANT FACTS

### A. Alisha Sewall Is A Disabled United States Military Veteran

8. Alisha Sewall served in the United States Army from March 2003 to May 2005.

9. In 2003, Ms. Sewall was deployed to Iraq to serve in the United States military operation, "Operation Iraqi Freedom."

10. In 2004—while Ms. Sewall was still deployed in Iraq—she was seriously injured when a HMMWV in which she was riding hit a cement barrier.

11. During her rehabilitation, Ms. Sewall was diagnosed with Post Traumatic Stress Disorder ("PTSD").

12. As a result of her physical injuries and PTSD, Ms. Sewall was medically discharged from the Army in May 2005.

13. In 2006 Ms. Sewall underwent reconstructive surgery at Houston's Veteran Affairs' ("VA") hospital to repair her fractured right knee.

14. In 2009 Ms. Sewall underwent right shoulder surgery to repair another service-related injury.

15. In December 2019, Ms. Sewall underwent a combined Medial Patellafemoral Ligament (MPFL) reconstruction with Tibial Tubercle Osteotomy surgery.

16. In May 2020 Ms. Sewall suffered a left ankle fracture from a fall.

17. In September 2020, Ms. Sewall underwent surgery for a torn labrum in her right hip.

18. In October 2020 Ms. Sewall fractured her right ankle after suffering another fall due to her chronic service-related physical instability. She was also diagnosed with a traumatic brain injury ("TBI") and osteopenia.

19. In April 2022, Ms. Sewall again fractured her right ankle due to her chronic service-related instability.

20. Since approximately 2005, Ms. Sewall has undergone extensive medical treatment at the VA for her service-related PTSD, depression, and anxiety.

21. In 2017, the VA classified Ms. Sewall as 100% disabled from her PTSD and partially disabled from her right leg injuries and degenerative joint disease.

22. In December 2022, the VA reaffirmed that Ms. Sewall is 100% disabled from her service-related PTSD and partially disabled from her service-related physical injuries.

23. As a result of the serious physical injuries, PTSD, and other psychological conditions referenced above, Ms. Sewall constitutes an individual with a "disability," as that term is defined under the ADA (42 U.S.C. section

12102) and the Rehabilitation Act; and a person with a "disability," as that term is defined under Tex. Labor Code section 21.002(6) and 21.002(11-a).

**B. Alisha Sewall Receives A Service Dog To Help Her Cope With Her PTSD And Other Disabilities**

24. Post-Traumatic Stress Disorder ("PTSD") is an anxiety and stress-related disorder characterized by persistent and intense symptoms related to intrusion, avoidance, negative alterations in cognition and mood, and alterations in arousal and reactivity.

25. PTSD is associated with high rates of co-morbidity with substance use, depression, and suicidal ideation.

26. The VA estimates that approximately 20% of United States military veterans returning from post-9/11 deployments suffer from PTSD.

27. Within the military population, PTSD can be difficult to treat.

28. A meta-analysis of nine randomized clinical trials of psychotherapy—a common treatment for PTSD—found that up to 72% of military patients maintained their pre-treatment PTSD diagnoses.

29. Studies show that military members infrequently take advantage of mental health services.

30. Studies further show that, among military members who do seek professional help, dropout rates during PTSD treatment can be as high as 50%.

31. Therefore, clinicians and researchers have concluded that there is a critical need for alternative and complementary treatments for PTSD in military patients.

32. Clinical studies show that specially trained therapy dogs reduce PTSD symptoms in military members and veterans and improve their quality of life. *See*, e.g., Department of Veteran Affairs, "A Randomized Trial of Differential Effectiveness of Service Dog Pairing Versus Emotional Support Dog Pairing to Improve Quality of Life for Veterans with PTSD," January 5, 2020, available at https://www.research.va.gov/REPORT-Study-of-Costs-and-Benefits-Associated-with-the-Use-of-Service-Dogs-Monograph1.pdf; Marguerite E. O'Haire & Kerri E. Rodriguez, "Preliminary Efficacy of Service Dogs as a Complementary Treatment for Posttraumatic Stress Disorder in Military Members and Veterans," Journal of Consulting and Clinical Psychology, *86*(2), 179–188, available at https://psycnet.apa.org/manuscript/2018-02789-002.pdf; Kerri E. Rodriguez et al, "The effect of a service dog on salivary cortisol awakening response in a military population with posttraumatic stress disorder (PTSD), Psychoneuroendocrinology, 98: 202–210, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8454180/

33. "The Rescue for PTSD" ("RPTSD") is a 501(c)(3) non-profit

organization that trains shelter/rescue dogs to serve as psychiatric service dogs for military veterans suffering from PTSD. *See https://rescueforptsd.org/*

34. In 2022, RPTSD specially trained and equipped a dog named "Independence" (a/k/a "Inde") to assist Ms. Sewall in coping with her PTSD and other service-related injuries. RPTSD specially trained and equipped "Inde" to perform numerous commands/therapeutic techniques for Ms. Sewall, including: a) "Deep Pressure Therapy"—also known as tactile stimulation—which assists Ms. Strife with her PTSD; b) "Grounding Handler," which assists Ms. Strife with anxiety episodes and protects her if/when she falls; c) "On The Guard," which alerts Ms. Sewall to the presence of others; and d) "The Front/Block," which alerts Ms. Sewall to and protects her from distress.

35. RPTSD also extensively trained Ms. Sewall in handling "Inde."

36. In June 2022, RPTSD provided "Inde" to Ms. Sewall for the purpose of serving as Ms. Sewall's psychiatric therapy dog.

37. Since June 2022, RPTSD has continued to specially train "Inde" to continue to assist Ms. Sewall in coping with her PTSD and other psychological and physical disabilities.

38. Since June 2002 Ms. Sewall has taken and used "Inde" as a service dog in her children's public schools; on a college campus; on public transportation; on

a commercial airplane; in grocery stores and other retail establishments; in VA facilities; on military installations; and in other venues, including “public facilities” and “places of public accommodation”—all without incident and without denial of entry or use.

39. Based on the above facts, “Inde” qualifies as a “service animal” under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* and as a “service animal” or “assistance animal” under Tex. Hum. Resources Code section 121.002(1).

**C. AISD Denies Ms. Sewall’s Request To Have And Use “Inde” At Work And Otherwise Discriminates Against Her Based On Her Disabilities**

40. Ms. Sewall has been employed by AISD since the 2012-2013 school year. Therefore, she constitutes an “employee,” as that term is defined under 42 U.S.C. 1211(4) and Tex. Labor Code section 21.002(7).

41. AISD constitutes an “employer,” as that term is defined under 42 U.S.C. section 12111(5) and Tex. Labor Code section 21.002(8).

42. Currently, Ms. Sewall serves as the “Manager Teacher Incentive Allotment” in AISD’s Human Resources Department.

43. Throughout her approximately 13 years of employment at AISD, Ms. Sewall has consistently received AISD’s highest job evaluations.

44. Ms. Sewall was recognized as AISD's "Employee of the Quarter" for the first quarter of 2024.

45. In 2022, AISD utilized a private company—Broadspire—to process AISD employees' ADA-related requests for reasonable accommodation of their disabilities. Therefore, at all relevant times, Broadspire was AISD's agent.

46. On August 30, 2022, Ms. Sewall requested—through Broadspire—that AISD reasonably accommodate her disabilities by allowing her to have and use a service dog while at work.

47. Throughout September 2022, AISD—acting both directly and indirectly through Broadspire—stonewalled Ms. Sewall's disability accommodation request.

48. In early September 2022, Ms. Sewall notified AISD that Broadspire was stonewalling her ADA request for reasonable accommodation of her disabilities and again requested that AISD reasonably accommodate her disabilities by allowing her to have and use a service dog at work.

49. In support of her request for a reasonable accommodation of her disabilities, Ms. Sewall tendered to AISD a September 20, 2022 letter from Dr. Lisa Miller, a VA Doctor of Pharmacy who has treated Ms. Strife for her service-related PTSD, major depression, and anxiety since 2007.

50. In her September 20, 2022 letter, Dr. Miller stated Ms. Sewall suffers

from "Major Depression, Post Traumatic Stress Disorder as well as a traumatic brain injury which affects her balance"; Ms. Sewall suffers from "osteopenia and is prone to falling"; and Ms. Sewall's service dog is "invaluable to her mental and physical health recovery."

51. In further support of her request that AISD reasonably accommodate her disabilities, Ms. Sewall tendered to AISD a September 29, 2022 letter from Dr. Gurtej S. Mann, a VA psychiatrist who has treated Ms. Sewall since August 2022.

52. In his September 29, 2022 letter, Dr. Mann stated Ms. Sewall suffers from "Major Depression, Post Traumatic Stress Disorder as well as a traumatic brain injury which affects her balance"; Ms. Sewall suffers from "osteopenia and is prone to falling"; and Ms. Sewall's service dog is "invaluable to her mental and physical health recovery."

53. Dr. Mann concluded his September 29, 2022 letter by requesting that Ms. Sewall be allowed to have her service dog at work.

54. Despite Dr. Miller and Dr. Mann's attestations that Ms. Sewall suffers from serious physical and psychological injuries that require her to have a service dog at work, AISD still refused to allow Ms. Sewall to have and use a service dog at work.

55. On or about November 1, 2022, Dr. Mann completed an AISD-provided

"Job Accommodation Questionnaire" (JAQ) regarding Ms. Sewall's request that AISD reasonably accommodate her disabilities by allowing her to have and use a service dog at work.

56. In his JAQ, Dr. Mann again attested that Ms. Sewall requires a service dog at work as a reasonable accommodation of her disabilities.

57. On or about November 1, 2022, AISD received Dr. Mann's JAQ for Ms. Sewall.

58. Nevertheless, AISD still refused to allow Ms. Sewall to have and use a service dog at work and, thereby, denied her a reasonable accommodation of her disabilities.

59. Despite receiving Dr. Miller and Dr. Mann's above-referenced letters and Dr. Mann's above-referenced JAQ, AISD notified Ms. Sewall that it was requiring her to submit to a medical examination by an ***AISD-retained*** doctor.

60. AISD's demand that Ms. Sewall submit to a complete medical examination by an AISD-retained doctor—which, as detailed *infra*, AISD maintained through February 24, 2023—violated AISD's own policies. Specifically, AISD's "DBB-Local" policy provides, in relevant part:

> The Superintendent or designee may require an employee to undergo a medical examination if information received from the employee, the employee's supervisor, or other

> sources indicates the employee has a physical or mental impairment that:
>
> 1. Interferes with the employee's ability to perform essential job functions; or
>
> 2. Poses a direct threat to the health or safety of the employee or others. A communicable or other infectious disease may constitute a direct threat.

61. Before ordering Ms. Sewall to submit to a medical examination by an AISD-retained doctor, AISD received ***no*** information that Ms. Sewall had a physical or mental impairment that interfered with her ability to perform essential job functions.

62. Consequently, on November 11, 2022, “The Rescue for PTSD”—through its legal counsel, Jennifer O’Connell—notified AISD, in writing, that its refusal to allow Ms. Sewall to have and use a service dog at work and its demand that she submit to a medical examination by an AISD-retained doctor violate the ADA.

63. Nevertheless, AISD still refused to allow Ms. Sewall to have and use a service dog at work and, thereby, denied her a reasonable accommodation of her disabilities.

64. On November 16, 2022, AISD again demanded that Ms. Sewall submit to a complete medical examination by an ***AISD-retained doctor*** as a pre-condition to its considering allowing her to have and use a service dog at work.

65. On November 18, 2022, Ms. Sewall—through her undersigned counsel—notified AISD that its demand that she submit to a medical examination by an AISD-retained doctor before even considering allowing her to have and use a service dog at work violates federal and state disability discrimination laws, including the ADA and Tex. Labor Code section 21.001 *et seq*. Therefore, Ms. Sewall demanded that AISD withdraw its medical examination requirement and permit her to have and use a service dog at work.

66. On December 5, 2022, AISD—through its General Counsel, M. Kaye DeWalt—notified Ms. Sewall that it refused to withdraw its demand that she submit to a medical examination by its retained doctor as a pre-condition to having and using a service dog at work.

67. Therefore, on December 22, 2022, Ms. Sewall—through her undersigned counsel—notified AISD, in writing, a ***second*** time that its demand that she submit to a medical examination by an AISD-retained doctor violates federal and state disability discrimination laws, including the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq*. Ms. Sewall notified AISD that if—by January 5, 2023—AISD refused to withdraw that demand, she would commence legal action against AISD under the aforementioned federal and state disability discrimination laws.

68. On December 23, 2022, AISD notified Ms. Sewall a ***third*** time that she must submit to a complete medical examination by an AISD-retained doctor before it would consider allowing her to have and use a service dog at work. *See* Exhibit J. Specifically, AISD instructed Ms. Sewall that, on January 10, 2023, she must submit to a medical examination by "Dr. Nguyen" at a Concentra Healthcare ("Concentra") facility in Houston.

69. Dr. Nguyen—the AISD-retained doctor by whom AISD demanded Ms. Sewall submit to a complete medical examination—is ***not*** a psychiatrist or psychologist and has no other expertise in diagnosing or treating PTSD, depression, or anxiety.

70. The medical examination that AISD demanded Ms. Sewall submit to by its retained, unqualified doctor (Dr. Nguyen) was intended to reveal and would necessarily have revealed to AISD Ms. Sewall's disabilities and the extent of her disabilities.

71. The medical examination that AISD demanded Ms. Sewall submit to by its retained, unqualified doctor (Dr. Nguyen) would have exceeded the scope of any even *putatively* legal medical examination allowable under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

72. Therefore, on January 6, 2023, Ms. Sewall—through her undersigned

counsel—again notified AISD, in writing, that its December 23, 2022 demand that she submit to a medical examination by an AISD-retained doctor violates federal and state disability discrimination laws, including the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* Ms. Sewall demanded—for a ***third*** time—that AISD withdraw its medical examination requirement and allow her to have and use "Inde" at work.

73. On January 6, 2023, Ms. Sewall filed a Charge of Discrimination against AISD with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission's Civil Rights Division ("TWCCRD"). In her EEOC/TWCCRD Charge, Ms. Sewall alleged that—in violation of the ADA and Tex. Labor Code section 21.001—AISD had, *inter alia*, refused to allow her to work at AISD with a service dog trained to assist her with her disabilities; required her to undergo a prohibited medical examination that was neither job-related nor consistent with business necessity; and required her to undergo a medical examination by an AISD-retained physician.

74. On January 10, 2023, Ms. Strife—and "Inde"—underwent a comprehensive physical examination at the VA to determine whether "Inde" effectively assists her with her mobility issues. The VA's physical examination of Ms. Sewall was conducted by Dr. Sheryl Vandeven, a VA doctor of Physical

Therapy.

75. Dr. Vandeven concluded that Ms. Sewall has "chronically impaired standing balance and gait, with history of multiple falls and injuries including fractures requiring multiple leg surgeries." *Id.* Dr. Vandeven further concluded that Ms. Sewall's "[c]ondition is appropriate for use of a mobility dog." *Id.*

76. Based upon Dr. Vandeven's findings, Dr. Darlene Makulski—a VA and Baylor College of Medicine Assistant Professor of Physical Medicine and Rehabilitation who has treated Ms. Sewall since December 2020—concluded that a "certified service mobility dog is appropriate for Ms. Sewall and should be utilized in all settings (including place of employment) to avoid further balance related injuries."

77. On January 11, 2023, Ms. Sewall—through her undersigned counsel—again notified AISD, in writing, that its continuing demand that she submit to a medical examination by an AISD-retained doctor violates federal and state disability discrimination laws, including the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.* Therefore, Ms. Sewall demanded—for a ***fourth*** time—that AISD withdraw its medical examination requirement and permit her to have and use "Inde" at work.

78. On January 13, 2023, Ms. Sewall—through her undersigned counsel—

provided AISD with the results of Dr. Vandeven's above-referenced January 10, 2023 medical examination.

79. On January 13, 2023, AISD—through its General Counsel (DeWalt)—notified Ms. Sewall—through her undersigned legal counsel—that AISD ***still*** refused to withdraw its demand that she submit to a medical examination by an AISD-retained doctor.

80. Despite the VA's January 10, 2023 examination and her VA doctors' consistent assessment that Ms. Sewall requires a service dog at work for her disabilities, AISD continued to refuse to allow Ms. Sewall to enter with her service dog ("Inde") and use her service dog at work and in its "public facilities." AISD thereby denied Ms. Sewall a reasonable accommodation of her disabilities—in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq*.

**D. Sewall Twice Sues AISD For Disability Discrimination**

81. To end AISD's longstanding, deliberate refusal to reasonably accommodate her disabilities, Ms. Sewall filed suit against AISD in the 333rd District Court of Harris County, Texas on January 18, 2023. *See Alisha Strife v. Aldine Independent School District et al*, No. 2023-03186 (333rd District Court, Harris County, Texas ("*Strife I*").

82. Despite and, indeed, because of *Strife I*, AISD ***still*** refused to reasonably accommodate Ms. Sewall's disabilities by allowing her to have and use a service dog at work and still refused to end its disability-based discrimination and retaliation against her.

83. Therefore, on February 1, 2023, Ms. Sewall filed a second lawsuit against AISD in the United States District Court for the Southern District of Texas, Houston Division. *See Alisha Strife v. Aldine Independent School District*, No. 4:23-cv-00358 (S.D. Texas, Houston Division) (Bennett, J.) (hereinafter "*Strife II*").

84. On February 24, 2023, AISD notified Ms. Sewall that it ***conditionally*** "approve[d]" her request to have and use "Inde" at work.

85. AISD's belated, conditional approval of Ms. Sewall's service dog accommodation on February 24, 2023, was a litigation ploy designed to forestall the United States District Court for the Southern District of Texas from issuing a preliminary injunction against it at the March 9, 2023 hearing on Ms. Sewall's Motion for Preliminary Injunction.

86. On June 12, 2024, the United States District Court for the Southern District of Texas granted AISD's Motion for Summary Judgment and Motion To Dismiss and entered Final Judgment in favor of AISD.

87. On June 14, 2024, Ms. Sewall appealed that Final Judgment to the

United States Court of Appeals for the Fifth Circuit.

88. On May 16, 2025, the Fifth Circuit reversed the United States District Court for the Southern District of Texas' dismissal of Sewall's ADA, RA, and TLC "reasonable accommodation" claims and remanded those claims.

### E. AISD Retaliates Against Alisha Sewall And Interferes With Her ADA/RA/TLC-Protected Rights for Filing/Litigating *Strife I* and *Strife II*

89. AISD knowingly, intentionally, and purposely retaliated against Ms. Sewall, coerced, and interfered with her for filing and litigating *Strife I* and *Strife II*. As detailed below, such retaliation, coercion, and interference include—but are not limited to—the following acts:

a. Failing/refusing to increase her compensation in the 2023-2024, 2024-2025, and 2025-2026 school years;

b. Failing/refusing to increase her pay grade in the 2023-2024, 2024-2025, and 2025-2026 school years

c. Decreasing her salary mid-point and, thereby, decreasing her annual pay raise potential in the 2023-2024, 2024-2025, and 2025-2026 school years;

d. Failing to promote her during the 2023-2024, 2024-2025 and 2025-2026 school years;

e. Constructively demoting her;

f. Scuttling her applications for other employment; and

g. Retaliating against her husband, Joseph Sewall

90. In her capacity as Manager Teacher Incentive Allotment, Ms. Sewall is responsible for procuring from the State of Texas and administering for AISD the state's Teacher Incentive Allotments ("TIA"), which are state-funded financial incentives for high-performing teachers. *See https://tiatexas.org/*

91. Through Ms. Sewall's hard work and skill, AISD has secured over **$18 million** in TIA monies from the State of Texas in the 2022-2025 school years.

92. Rather than reward—or, at least, equitably treat—Ms. Sewall for her substantial accomplishments as its TIA Manager, AISD has systematically punished and retaliated against her for *Strife I* and *Strife II*.

93. For example, in the 2024-2025 school year, AISD changed Ms. Sewall's title from "Performance Management Project Analyst" to "**Manager** Teacher Incentive Allotment." Yet, despite this title promotion, AISD increased her actual salary by only **1%** (i.e. less than inflation); did ***not*** increase her pay grade ("Administrative Level 3"); ***reduced*** her salary mid-point by approximately **11%**, which substantially reduced her 2024-2025 pay raise because AISD calculates pay raises using the salary mid-point; and increased her salary minimum by only **1%** (i.e. less than inflation).

94. By contrast, in the 2024-2025 school year, AISD substantially ***increased*** the compensation of comparable employees. For example, in the 2023-2024 school

year, AISD accorded AISD's Manager of Teacher Pathways ("MTP") the ***same*** grade level ("3"), the ***same*** salary minimum ($69,076), and the ***same*** salary mid-point ($93,995) as it accorded Sewall. Yet, in the 2024-2025 school year, AISD changed the MTP's title to "Director," while only changing Sewall's position to "Manager"; increased the MTP employee's pay grade by **6** levels, while not increasing Sewall's grade level at all; increased the MTP's salary minimum by **43% (**from $69,076 to $98,626), while increasing Sewall's salary minimum by **1%**; and increased the MTP's salary mid-point by **26%** ($93,995 to $118,399), while ***reducing*** Sewall's by **11%.**

95. In March 2024, AISD re-classified the comparable position of "Guest Teacher/Classified **Manager**" to **"Director**" and awarded the incumbent a substantial pay grade and salary increase. Yet, AISD failed/refused to re-classify Ms. Sewall's TIA position to Director-level or award her any pay grade increase or material salary increase.

96. In the 2025-2026 school year, AISD increased the pay grade, salary minimum, and salary mid-point of another position comparable to Ms. Sewall's: Substitute and Classified Staffing Coordinator ("SCSC"). In the 2024-2025 school year, AISD accorded the SCSC the ***same*** pay grade; salary minimum; and salary mid-point as Ms. Sewall. Yet, in the 2025-2026 school year, AISD promoted the

SCSC to "Director"; increased the SCSC's pay grade by **five** levels (from Administrative level 3 to "Administrative level 8); increased the SCSC's salary minimum by **34%** ($69,872 to $93,485); and increased SCSC's salary midpoint by **34%** ($83,880 to $112,227)—again, while leaving Sewall's title, grade level, salary minimum, and salary mid-point the ***unchanged***.

97. Additionally, effective in the 2025-2026 school year, AISD substantially increased the compensation and/or pay grade of—at a minimum—the following ***non-Manager*** positions, while failing/refusing to increase Ms. Sewall's, who—again—is a ***Manager***:

- ARD Facilitator
- Assistant Principal Resident Intern
- Athletic Trainer
- Campus and Student Initiatives Coordinator
- Campus Athletic Coordinator
- Digital Learning Specialist
- District Biliteracy Coach
- District Literacy Coach
- District Math Coach
- District Multilingual Coach

- District Novice Teacher Support Coach
- District Science Coach
- Digital Integrations Coordinator
- District Special Education Coach
- Dropout Recovery and Student Attendance Specialist
- Itinerant Dyslexia Specialist
- Education Specialist - Head Start
- FACE District Liaison
- Family Engagement Specialist
- HEAL and Student Initiatives Coordinator
- IB Magnet Coordinator
- Information Literacy Specialist (LMC) - Elementary
- Information Literacy Specialist (LMC) - Secondary
- Instructional Specialist
- Multimedia and Events Coordinator
- Professional Registrar
- School Nurse - RN
- Teacher Support Specialist

In so doing, AISD constructively demoted Ms. Sewall.

98. AISD actually or constructively demoted Ms. Sewall in another respect: before AISD re-assigned Ms. Sewall to the TIA position in the 2022-2023 school year, Ms. Sewall served as AISD's Assessment and Data Specialist ("ADS"). The ADS position was and remains a ***non-Manager*** position. Yet, AISD recently increased the ADS' pay grade from the lower **"Teacher"** pay level **3** to the **"Administrative"** pay level **4**: that is, several pay grades and, critically, one Administrative level pay grade ***above*** Ms. Sewall's—who, again, is a **Manager**.

99. AISD's knowing, intentional, and purposeful retaliation against and interference with Ms. Sewall for exercising her protected ADA, RA, and TLC rights in *Strife I* and *Strife II* are further exemplified by the following acts: in the 2024-2025 school year, AISD substantially increased the compensation and/or pay grades of other employees in her employee unit: specifically, 1) Director of Human Capital Analytics ("DHCA"); 2) Director of Performance Management ("DPM"); and 3) Executive Director of Performance Management ("EDPM").

100. Specifically, AISD ***increased*** the DHCA's pay grade by **three** levels ("Administrative" level 6 to "Administrative" level 9); increased the DPM's pay grade by **three** levels ("Administrative" level 6 to "Administrative" level 9); and increased the EDPM's pay grade by **four** levels ("Administrative" level 7 to "Administrative" level 11)—while failing to increase Ms. Sewall's grade level at

all.

101. AISD also substantially increased the DHCA, DPM, and EDPM's salary minimums, resulting in substantial base salary increases. Specifically, AISD increased the DHCA's salary minimum by **12%**; increased the DPM's salary minimum by **12%**; and increased the EDPM's salary minimum by **14%**--while increasing Ms. Sewall's salary minimum by only **1%**. AISD also increased the DHCA, DPM, and EDPM's salary mid-points, resulting in substantial increases in their annual pay raise potential. Specifically, AISD increased the EDPM's salary mid-point by **21%**; increased the DHCA's salary mid-point by **3%**; and increased the DPM's salary mid-point by **3%**--while ***reducing*** Ms. Sewall's salary mid-point by **11%** which, again, reduced her pay raise potential.

102. In 2025, AISD further retaliated against Ms. Sewall for *Strife I* and *Strife II* and interfered with her ADA/RA/TLC-protected rights by scuttling her application(s) for employment outside of AISD.

103. AISD has further retaliated against and coerced Ms. Sewall for *Strife I* and *Strife II* and interfered with her ADA/RA/TLC-protected rights by retaliating against, coercing, and interfering with her husband, Joseph Sewall, for his aid, assistance, and encouragement of her in *Strife I* and *Strife II*. *See infra.*

104. AISD's intentional, knowing, and purposeful retaliation against Ms.

Sewall for her ADA, RA, and TLC-protected activity and interference with her ADA, RA, and TLC-protected rights have substantially harmed her, including—but not limited to—by causing her substantial financial/economic loss, damaging her future earning potential, and damaging her career and professional reputation.

105. AISD's illegal disability-based retaliation against and coercion of Ms. Sewall and interference with her rights under the ADA, RA, and TLC are the "motivating factor," "but for cause," "proximate cause," and/or "sole cause" of Ms. Sewall's substantial harm and damage.

106. AISD has neither articulated nor offered any evidence of any legitimate, non-discriminatory reason for retaliating against, and interfering with Ms. Sewall's protected rights under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

107. To the extent that AISD may *belatedly* articulate and offer evidence of purported "legitimate, non-discriminatory" reason(s) retaliating against and interfering with Ms. Sewall's protected rights in violation of the ADA, the RA, and the TLC, such reason(s) are not, in fact, legitimate or non-discriminatory; are not credible; and are merely pretext(s) and subterfuge(s) for AISD's intentional retaliation against and interference with Ms. Sewall's rights—in violation of those laws.

### F. AISD Discriminates And Retaliates Against Joseph Sewall And Interferes With And Coerces Him For His Association/Relationship With Alisha Sewall And For Assisting, Aiding, And Encouraging Her In *Strife I* And *Strife II*

#### 1. Joseph Sewall Is A Highly Decorated United States Military Servicemember

108. Joseph Sewall is a longstanding, highly accomplished United States military servicemember.

109. Since March 2000, Mr. Sewall has served with distinction in the United States Army and the Army National Guard, achieving the rank of "Major."

110. In 2018–2019, Mr. Sewall directed operations for a joint and coalition task force of 2,250 United States military personnel in Afghanistan. In this capacity, Mr. Sewall oversaw base defense, emergency response, and critical infrastructure protection, while leading a 50-person multi-national operations cell. Mr. Sewall was awarded the "Meritorious Service Medal" for his combat leadership in this role.

111. Mr. Sewall currently serves as a Branch Chief within the G-3 Operations Directorate, Joint Force Headquarters, in the Georgia Army National Guard. In this capacity, Mr. Sewall oversees operational planning, training management, and resource alignment across multiple brigades and subordinate units. His work directly supports the Adjutant General and senior leaders in

ensuring readiness for both federal mobilizations and state missions, including disaster response and defense support to civil authorities.

112. Mr. Sewall also holds a Master of Business Administration ("MBA") degree.

### 2. Joseph Sewall Is A Highly Accomplished AISD Employee

113. AISD has employed Joseph Sewall since approximately July 2021.

114. Since September 2022, Mr. Sewall has served as AISD's Programmer Analyst—Postsecondary Outcomes ("PAPSO"). In that capacity, Mr. Sewall ensures AISD's compliance with state college, career, and military readiness ("CCMR") requirements, provides accurate longitudinal data, and supports districtwide decision-making. Mr. Sewall is responsible for managing and analyzing data that inform district accountability, state and federal reporting, and student post-secondary success tracking.

115. Mr. Sewall's performance as PAPSO has been outstanding, as evidenced by his annual performance evaluations, which attest that he has exceeded expectations in numerous performance categories.

### 3. Joseph Sewall Aids, Assists, And Encourages Alisha Sewall In *Strife I* and *Strife II*

116. Since August 2022, Joseph Sewall has assisted, aided, and encouraged Alisha Sewall—his wife—with respect to *Strife I* and *Strife II.*

117. For example, on February 15, 2023, Mr. Sewall voluntarily appeared in the United States District Court for the Southern District of Texas (Houston Division) to testify as a witness on Ms. Sewall's behalf at a hearing on her Motion for Temporary Restraining Order in *Strife II*.

118. On February 24, 2023, Mr. Sewall formally appeared as a witness on Ms. Sewall's behalf in *Strife II*. Specifically, Ms. Sewall disclosed Mr. Sewall as a witness regarding her "application and need for an RPTSD service dog; RPTSD's training of service dogs, generally, and [her] service dog ("Inde"); RPTSD's training of [her] to handle a service dog; the functions and capabilities of service dogs; [her] request that AISD reasonably accommodate her disabilities by allowing her to work with her service dog; and the damage AISD has caused [her] by denying her a reasonable accommodation of her disabilities by refusing to allow her to work with her service dog at AISD."

**4. AISD Retaliates Against, Coerces, And Interferes With Joseph Sewall**

119. As detailed below, AISD intentionally, knowingly, and purposely discriminated against, retaliated against, coerced, and interfered with Mr. Sewall because of his relationship/association with his wife (Alisha Sewall) and for assisting, aiding, and encouraging Ms. Sewall in *Strife I* and *Strife II*.

120. AISD failed/refused to promote Joseph Sewall to—at a minimum—the

following positions for which he applied and was qualified:

- Director of Student Services
- Director of Position Control
- Executive Director of Human Resources, Data Analytics, and State Reporting
- Program Director of Career and Technical Education (CTE)
- Program Director of Career and Technical Education Partnerships

121. Effective the 2024-2025 school year, AISD substantially increased the compensation and/or pay grades of numerous putatively comparable employees, while failing/refusing to increase Mr. Sewall's compensation and pay grade. Those employees include, but are not limited to, the following: a) Senior Programmer Analyst—Student Services (increase from Administrative pay grade 3 to Administrative pay grade 7); b) Programmer Analyst-Student Services (increase from Administrative pay grade 3 to Administrative pay grade 6); and c) Coordinator College and Career Readiness ("CCCR") (increase from Administrative level 3 to Administrative level 6).

122. In approximately July 2024, AISD substantially increased the compensation, pay grade, and/or salary minimum of three AISD employees in Mr. Sewall's employee unit: a) Coordinator College and Career Readiness ("CCCR");

b) Director of College Readiness ("DCR"); and c) Executive Director of Post-Secondary Outcomes ("EDPSO")—while failing/refusing to increase Mr. Sewall's pay grade and increasing his salary minimum by only **1%** (i.e. less than inflation). Additionally, AISD substantially increased the compensation mid-point of the EDPSO (by 21%) and the CCCR (by 6%), while ***reducing*** Mr. Sewall's salary mid-point by **11%**.

123. Effective the 2025-2026 school year, AISD substantially increased the compensation and/or pay grade of—at a minimum—the following lower-level and/or non-administrative positions, while failing/refusing to increase Mr. Sewall's:

- ARD Facilitator
- Assistant Principal Resident Intern
- Athletic Trainer
- Campus and Student Initiatives Coordinator
- Campus Athletic Coordinator
- Digital Learning Specialist
- District Biliteracy Coach
- District Literacy Coach
- District Math Coach

- District Multilingual Coach
- District Novice Teacher Support Coach
- District Science Coach
- Digital Integrations Coordinator
- District Special Education Coach
- Dropout Recovery and Student Attendance Specialist
- Itinerant Dyslexia Specialist
- Education Specialist - Head Start
- FACE District Liaison
- Family Engagement Specialist
- HEAL and Student Initiatives Coordinator
- IB Magnet Coordinator
- Information Literacy Specialist (LMC) - Elementary
- Information Literacy Specialist (LMC) - Secondary
- Instructional Specialist
- Multimedia and Events Coordinator
- Professional Registrar
- School Nurse - RN
- Teacher Support Specialist

In so doing, AISD constructively demoted Mr. Sewall.

124. At the time AISD engaged in the above-referenced retaliatory/reprisal acts against Joseph Sewall, AISD knew of Mr. Sewall's association/relationship with Alisha Sewall and knew that he was aiding, assisting, and encouraging her with respect to *Strife I* and *Strife II*.

125. AISD's above-referenced adverse employment actions against Mr. Sewall occurred under circumstances raising a reasonable inference that Ms. Sewall's disability was a determining factor in AISD's taking such adverse actions.

126. AISD's intentional, knowing, and purposeful discrimination, retaliation, coercion, and interference with Joseph Sewall because of his relationship/association with and his assistance, aid, and encouragement of Alisha Sewall with respect to *Strife I* and *Strife II* have substantially harmed Joseph Sewall, including—but not limited to—by causing him substantial financial/economic loss, damaging his future earning potential, and damaging his career and professional reputation.

127. AISD's discrimination against, retaliation against, coercion of, and interference with Joseph Sewall in violation of the ADA, RA, and TLC are the "motivating factor," "but for cause," "proximate cause," and/or "sole cause" of Mr. Sewall's substantial harm and damage.

128. AISD has neither articulated nor offered any evidence of any legitimate, non-discriminatory reason for discriminating against, retaliating against, coercing, and interfering with Joseph Sewall in violation of the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

129. To the extent that AISD may belatedly articulate and offer evidence of purported "legitimate, non-discriminatory" reason(s) for discriminating against, retaliating against, coercing, and interfering with Mr. Sewall in violation of the ADA, the RA, and the TLC, such reason(s) are not, in fact, legitimate or non-discriminatory; are not credible; and are merely pretext(s) and subterfuge(s) for AISD's intentional violation(s) of those laws.

**G. AISD Operates Programs And Activities That Receive Federal Financial Assistance**

130. Throughout Alisha Sewall and Joseph Sewall's employment with AISD, AISD has maintained and operated programs and/or activities with which both have been involved that received and continue to receive federal financial assistance under 29 U.S.C. section 794 and its implementing regulations.

**H. All Pre-Conditions To Suit Have Occurred**

131. Alisha Sewall and Joseph Sewall have exhausted or will exhaust any/all administrative remedies under the ADA, the Rehabilitation Act, and Tex. Labor Code section 21.001 *et seq.*

132. All conditions precedent to the filing of this action have been performed or have occurred.

## V. CAUSES OF ACTION

Plaintiffs, Alisha Sewall and Joseph Sewall, incorporate by reference herein the allegations set forth in paragraphs 1 through 132, *supra*, and further allege:

## FIRST CAUSE OF ACTION

133. Defendant, AISD, violated Alisha Sewall's rights under the ADA, 42 U.S.C. section 12111 *et seq.*, by *inter alia*: a) retaliating or discriminating against her because she opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA; and/or b) interfering with her in the exercise or enjoyment of, or on account of her having exercised or enjoyed, her rights under the ADA.

## SECOND CAUSE OF ACTION

134. Defendant, AISD, violated Alisha Sewall's rights under the Rehabilitation Act, 29 U.S.C. section 791 *et seq.*, because it excluded her from participating in, denied her the benefits of, and/or subjected her to discrimination under a program or activity receiving federal financial assistance solely because of her "disabilities." Such exclusion, denial, and discrimination include, but are not

limited to: a) retaliating or discriminating against her because she opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under the Rehabilitation Act; and/or b) aiding, abetting, inciting, or coercing a person to engage in a discriminatory practice.

**THIRD CAUSE OF ACTION**

135. Defendant, AISD, violated Alisha Sewall's rights under Tex. Labor Code section 21.001 *et seq*. by *inter alia*: a) retaliating or discriminating against her because she opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under Tex. Labor Code section 21.001 *et seq*.; and/or b) aiding, abetting, inciting, or coercing a person to engage in a discriminatory practice.

**FOURTH CAUSE OF ACTION**

136. Defendant, AISD, violated Joseph Sewall's rights under the ADA, 42 U.S.C. section 12111 *et seq*., by *inter alia*: a) retaliating or discriminating against him because he opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or

assisted, or participated in any manner in an investigation, proceeding, or hearing under the ADA; b) interfering with him in the exercise or enjoyment of or on account of his having aided or encouraged another individual (Alisha Sewall) in the exercise or enjoyment of rights under the ADA; and/or c) excluding or otherwise denying him equal jobs or benefits because of the known disability of an individual (Alisha Sewall) with whom he (Joseph Sewall) is known to have a relationship and/or association.

**FIFTH CAUSE OF ACTION**

137. Defendant, AISD, violated Joseph Sewall's rights under the Rehabilitation Act ("RA"), 29 U.S.C. section 791 *et seq.*, because it excluded him from participating in, denied him the benefits of, and/or subjected him to discrimination under a program or activity receiving federal financial assistance solely because of her Alisha Sewall's "disabilities." Such exclusion, denial, and discrimination include, but are not limited to: a) retaliating or discriminating against him because he opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under the Rehabilitation Act; b) interfering with him on account of his having aided or encouraged another individual (Alisha Sewall) in

the exercise or enjoyment of her rights under the RA; and/or c) excluding or otherwise denying him equal jobs or benefits because of the known disability of an individual (Alisha Sewall) with whom he (Joseph Sewall) is known to have a relationship or association.

**SIXTH CAUSE OF ACTION**

138. Defendant, AISD, violated Joseph Sewall's rights under Tex. Labor Code section 21.001 *et seq.* by *inter alia*: a) retaliating or discriminating against him because he opposed its discriminatory employment practices; made or filed a charge of discrimination; filed a complaint of disability discrimination; and/or assisted, or participated in any manner in an investigation, proceeding, or hearing under Tex. Labor Code section 21.001 *et seq*.; b) interfering with him on account of his having aided or encouraged another individual (Alisha Sewall) in the exercise or enjoyment of her rights under the ADA; and/or c) excluding or otherwise denying him equal jobs or benefits because of the known disability of an individual (Alisha Sewall) with whom he (Joseph Sewall) is known to have a relationship or association.

## VI. RELIEF SOUGHT

Accordingly, Plaintiffs, Alisha Sewall and Joseph Sewall, respectfully move this Honorable Court—after trial by jury on all issues so triable—for the following non-exclusive relief from Defendant, AISD:

1. Declaratory Judgment that AISD violated their rights under the ADA, 42 U.S.C. section 12111 *et seq.*; the Rehabilitation Act, 29 U.S.C. section 791 *et seq.*; and Tex. Labor Code section 21.001 *et seq.*;

2. Compensatory and/or actual damages;

3. Reasonable attorney's fees, costs, and expenses;

4. Pre-judgment and post-judgment interest; and

5. All other relief, whether at law or in equity, to which they are justly entitled.

Respectfully submitted,

**/s/ Scott Newar**
SCOTT NEWAR
S.D. Tex. Bar No. 19191
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181
E-Mail: newar@newarlaw.com

ATTORNEY-IN-CHARGE
FOR PLAINTIFFS, ALISHA
SEWALL AND JOSEPH SEWALL

**Of Counsel:**

Dennis Herlong
Law Office of Dennis Herlong
Texas Bar No. 09510500
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: 713-228-9222
Fax: 713-228-9226
E-Mail: lawfirm@dennisherlong.com